The first case of the afternoon is the Board of Education of Schaumburg v. TRS for the appellant, Mr. Malachowski. Pronounce that correctly. And for the appellee, Mr. Loewenstein. You may proceed. Thank you, Your Honor, and may it please the Court. The Illinois Pension Code prohibits the Teachers' Retirement System from assessing an employer contribution or penalty against a school district that provides salary increases pursuant to a contract that's entered into before June 1, 2005. That's Section 16-158G of the Illinois Pension Code. It's included on page 4 of our brief. These contracts that were entered into before June 1, 2005  are called grandfathered contracts. So I'll refer to them as grandfathered contracts in the argument. My client, Schaumburg School District 54, provided salary increases to seven administrators pursuant to a contract that was entered into before June 1, 2005. TRS assessed a contribution or penalty against my client anyways, and the TRS administrative decision that upholds that contribution against my client is legally incorrect and should be overturned. At issue in this case specifically is the district's voluntary retirement program and whether or not that's a contract entered into before June 1, 2005. Our position is that under both the plain language of TRS written regulations as well as Illinois contract law, either one, that is a contract that's entered into before June 1, 2005. Because the administrators at issue received their salary increases pursuant to that grandfathered contract, the district can't be penalized for that. First, I guess I should talk about the written regulation. There are two written regulations at issue, Section 1650.483 and .484. These have been around since 2005 when they were approved by TRS. And they state that TRS will accept an employment policy as an exempt contract pursuant to the rule of 16-158G. There are a few conditions for that to occur. First is the policy had to be in effect before June 1, 2005. In this particular case, the voluntary retirement program was approved by the board almost a year before that in 2004. And it provided for all the retirement incentives that were at issue in this case, which were provided to the administrators of the district. Second, the employee must provide notice of intent to retire under the terms of that policy. The administrators here did provide that notice of intent to retire pursuant to the terms of that policy. The policy said exactly when people had to provide their notice of intent to retire, and it said exactly the benefits that they would get and when if they did. And all the administrators met those conditions. Third, if the policy is governed by the provisions in the employer's collective bargaining agreement, then the exemption from contributions lasts for the same length of time as that collective bargaining agreement. Now, collective bargaining agreements have what's called extended grandfathering. They're exempt from contributions for three years after the expiration of the collective bargaining agreement, but no later than June 30, 2011. In this particular case, the voluntary retirement program was governed by the terms of the certified staff collective bargaining agreement. Therefore, the voluntary retirement program itself has an All of the administrators at issue in this case got their salary increases and retired under this program before June 30, 2011. TRS attempts to escape the plain language of this written regulation by pointing to section 1650.484A. And they say that under that subsection, these rules don't apply if an administrator is covered by an employment contract. And that's a correct reading of the reg because section 1650.44A says it doesn't apply to administrators that had employment contracts. But there is no evidence in the record or under law that these individual administrators had employment contracts. Therefore, 1650.44A clearly applies. TRS attempts to point to two rules to construct an employment contract for these administrators. The first rule they look at is under section 10-23.8A of the Illinois School Code. That section of the school code establishes rules for administrator contracts that actually exist. It says you can either have a one-year contract or if you decide that you want to employ an administrator under a multi-year contract, it has to be performance based. It has to have performance goals and indicators for that contract. It actually says school districts may only employ principals and other administrators under either a contract for a period not to exceed one year or a multi-year contract. But it doesn't leave out the possibility of school districts not extending an employment contract offer to somebody at all. I believe they have that right. School districts have broad rights under Illinois law that are implied from all the interpretation. In other words, I think that school districts... Are you arguing they didn't even have a contract? They did not have employment contracts. Even under the one-year provision in the statute? Well, that one-year provision under the statute says that you can, that you may, it says the word may, employ people pursuing... Only employ people is what it says. You're leaving out an important word it seems to me. Sure, but the statute doesn't say that you are prohibited from employing people without a contract. Well, it says you may only employ administrators in one of two ways. I'm not sure if that word is correct. Okay, well, I guess I would point to 10-20.7 of the school code, which allows school districts to appoint certificated staff and fix their salaries. And I would point to the Ambrosio case, which gives school districts broad powers that spring out of the express grant of statutory rights. I believe that the purpose of 10-23.8a is to state the rules that apply to administrator contracts that exist. There's nothing in there that says you must offer an employment contract to your employee. There are plenty of employees in the state of Illinois that don't have employment contracts. How many school administrators are there? There are multiple school districts that employ school administrators without an employment contract. They're put into a position, they're informed what their salary is, and they work. And they might have tenure, and I'll talk about tenure in a minute. Tenure gives you job security. It doesn't give you an employment contract under the words that TRS used in its regs. Another important case to note, I think, is the Fumarolo decision, which states that the presumption is that a statute does not create private contractual rights. And I believe that's important here because otherwise TRS could presume that 10-23.8a establishes an employment contract. But the Illinois Supreme Court said no, that's not what a statute does. If it doesn't state that it's establishing a contract, it doesn't. And we cite a similar statute dealing with Chicago Public Schools where it was very clear what the General Assembly did there. They did establish a contract by operation of law because those are the words they used. They said there shall be established a contract by operation of law. The General Assembly didn't do that in 10-23.8a, so I think the legal presumption is that no private contractual rights exist. TRS also cites to Section 24-11 of the Illinois School Code, which is the teacher tenure law. But I believe the cases we've cited establish that that law is intended to create job security, not an employment contract. And I think one case that TRS and the District both cite is Arduini. Arduini is specifically a case where the administrator at issue refused, rejected an employment contract, similar to the Bond decision that we cite. In those cases, the court said they didn't have to accept that employment contract. And because they didn't, that employment contract that was offered to them was not effective. What did they have instead? They had tenure. They had job security. Under the teacher tenure law, yes, there are certain procedures that have to be followed to be able to terminate a tenured teacher. But teacher tenure doesn't even give an administrator the right to serve as an administrator. Teacher tenure under 24-11 simply gives them a job in the school district as a certified employee. And our citation to the Lane decision establishes that. Tenure only gives you the right to occupy a desk somewhere as a certified employee within the school district. It doesn't give you rights to stay as an administrator. In short, on the reg, I believe that these administrators did not have employment contracts. And therefore, the regulations apply. And the employment policy has to be accepted as an exempt contract. Let's assume for a minute that this regulation was never written by TRS. Let's assume that it never existed. We would still have the statute. The statute is what governs as well. Section 16-158G exempts contracts and collective bargaining agreements that were entered into before June 1st of 2005. It doesn't just say particular types of contracts. Frankly, there could be multiple different types of contracts that a school district has for its employees. It could have a contract for health insurance. It could have a contract governing sick leave. It could have contracts governing their work status. The contract that's at issue in this case is one that provides for retirement incentives. It was the Voluntary Retirement Program sponsored by the district. When is that contract actually formed, though? It was formed in 2004. Before the person even gets notice of their intent to retire? Yes, I believe so. Because under the Molina v. Anheuser-Busch decision, the court there was careful to note, this is a quote, they said, by continuing her, meaning Molina's employment with Anheuser-Busch, plaintiff both accepted the offer and provided the necessary consideration. Molina supports the proposition that continued employment counts as acceptance and consideration. And under Dole DeLisle v. St. Mary of Nazareth Hospital, if you have a policy that's disseminated to employees and it can be reasonably understood as an offer, and as long as you have the elements of offer, acceptance, and consideration, that's a contract under Illinois law. This particular contract said exactly what the salary increases were. There's no dispute about that. It says exactly how you had to qualify for them. It said when you had to provide the notice of intent to retire. And it also stated how long the program remained in place. It said the program would remain in place until January 2nd of 2009. All these individuals provided their retirement incentives pursuant to that. And once that program was disseminated to them in 2004, a year before the penalty statute was enacted by the General Assembly, once that was disseminated and these individuals continued their employment, you had offer acceptance and consideration. You had a contract which was entered into before June 1st of 2005 and must be considered grandfathered under TRS rules. They didn't have employment contracts, but they had a contract for retirement incentives. Just like they probably had a contract for health insurance terms, they may have had, I don't know what other contracts they may or may not have had. It's not in the record. But a school district can have multiple contracts. It could decide not to have employment contracts or it might. It could have contracts for retirement incentives or not. These particular administrators didn't have employment contracts, but they did have a contract for retirement incentives, the Voluntary Retirement Program. That's the only contract at issue in this case. It's the only contract in the record. It was entered into before June 1st of 2005. You're talking about the exemption for the collective bargaining agreements, but these employees were not covered under the collective bargaining agreements. Well, the exemption isn't just for collective bargaining agreements. It specifically says contracts or collective bargaining agreements. This is a contract. This exemption for grandfathered status is for both contracts and collective bargaining agreements. It doesn't have to be a collective bargaining agreement. And TRS, throughout all the materials they cite, TRS would agree that an administrator can have an exempt contract, whether or not they're covered by the collective bargaining agreement. They just don't think these seven administrators are because they don't think that the Voluntary Retirement Program is a contract. But it is. Finally, TRS cites an unpublished decision from this court, Homewood-Flossmoor. And I have to pay attention to it because it is from this court and it's cited in the record at 139 to 148 of the record. But there are several reasons why that case is distinguishable. The superintendent administrator that was involved in the Homewood-Flossmoor case was not tenured. And the court was careful to note that. I think the situation here is vastly different when we have tenured administrators that had every right to believe that the terms of the Voluntary Retirement Program would be left open and available to them. And the court was careful to note in the Homewood-Flossmoor case that the superintendent was not tenured. The superintendent in Homewood-Flossmoor had an express written employment contract in writing. It was a multi-year contract. The retirement policy in Homewood-Flossmoor, there was no evidence that was governed by the terms of a collective bargaining agreement. So it wouldn't have gotten extended grandfathering protection anyways. And then fourth, there was no evidence in the Homewood-Flossmoor case to support the view that another document could have been an agreement between the parties. Here we have another document between the parties, the Voluntary Retirement Program. It can reasonably be understood as an offer. It was accepted. It was supported by valuable consideration. It was entered into before 6-1 of 05. Under both the statute and the regulations, it's a grandfathered contract. And for that reason, TRS's administrative decision is legally incorrect. And this court has the power under the administrative review law and should reverse that decision. Any other questions? I don't believe so. Thank you. We'll have additional time under rebuttal. May it please the Court, Counsel. My name is Ralph Lowenstein, and I'm here on behalf of the Illinois Teachers Retirement System. And as my opposing counsel stated, the issue in this case is whether or not the Illinois Teachers Retirement System is entitled to a contribution from the Schaumburg School District pursuant to 16-158F of the pension code. As a result of having paid seven administrators salary increases in excess of the 6% salary cap. The facts in this case are relatively simple and straightforward, but extremely important. It involves seven administrators, all of whom, according to pleadings filed by the school district, had continuing year-to-year contracts. None of the administrators had a written contract, but that doesn't mean they didn't have a contract. They did not have performance-based contracts, multi-year performance-based contracts, nor were they covered by a collective bargaining agreement. All of the administrators gave their notice of intent to retire sometime between December of 2006 and November of 2007. And all of them retired either effective July 1, 2009 or July 1, 2010 and received salary increases pursuant to retirement incentives between the dates of the notice of intent to retire and the retirement date in excess of 6%. Now, as you pointed out earlier, in response to opposing counsel's statement or argument, we have what's found in the school code as 10-23.8A. And that essentially allows a school district to only employ an administrator in two ways. They must either employ them on a multi-year performance-based contract, in which case they give up tenure for purposes of the length of their contract, or alternatively, they can be employed on essentially a year-to-year contract or a contract up to one year. There is no third alternative, as argued by the Board of Education. Now, the significance of this is that, as counsel said, there's a grandfathering or exemption provision found in 16-158G. And that provides that if a contract is entered into, amended or renewed prior to June 1, 2005, then it's considered a grandfathered or exempt contract, not subject to this contribution. So why is this provision that I've just cited in opposing counsel cited so important? It's so important because what it establishes is that because these people, by stipulation, were not covered by a collective bargaining agreement, were not covered by a multi-year contract, by virtue of the clear language of the legislature, they were employed under a year-to-year contract, which means that the exempt contract in this case was a 2004-2005 school year. And if you remember correctly, the stipulations of record make clear the notice of intent to retire, as well as the payments were made after that exempt contract had expired. And really, I don't know that the court has to go much beyond that to reach the conclusion that the TRS decision should be affirmed. But since counsel has done such a thorough job of arguing the regulations, I think it's important to address them. His primary argument is based upon TRS Rule 1650.484, and that provides, under some limited circumstances, for an employer policy to govern whether or not something is exempt. But what you have to begin with is subsection A of that provision, because subsection A says that it only applies to members not covered by a collective bargaining agreement or by an employment contract. Now, these particular seven administrators not only are covered by an employment contract pursuant to 10-23.8A, but in addition to that, they have a contract by operation of law pursuant to their tenure rights. And this provision, 484A, doesn't say it has to be a written contract. It just says it has to be an employment contract. 16-158G talks about a contract. It doesn't talk about a written contract. So we don't even reach beyond that first provision, subsection A, because 484 doesn't apply in this particular situation. But let's assume, arguendo, that counsel is correct and that there is no employment contract, they're not covered by a collective bargaining agreement. Then we go beyond that to subsection C, and it says employees operating under employment policies will be deemed to be employed under a one-school-year contract for exemption from employer contributions. And this pertains to policies. Well, even if we assume that there is no contract, then this only creates an exempt or grandfathered contract for one year, which is the 2005-2006 school year, pursuant to a clear interpretation of this regulation. But in addition to that, we've interpreted that further by our employer bulletins, which are also part of the record and clearly state we're talking about 2005-2006 school year. Once again, the notice of intent to retire was given after that exempt contract had expired that year, and the payments were made subsequent to that. So even with that assumption, they still don't win under this. But let's go on to the next level, which is the next level. They're talking about whether or not policies are governed by the provisions of the employer's collective bargaining agreement. Look back at the stipulation that was entered into the parties where the parties have stipulated that these people were not covered by a collective bargaining agreement. So even if the people covered by the collective bargaining agreement, who were the certified employees who were the teachers, that somehow that governed the voluntary retirement incentive, you can't have a policy governed by a collective bargaining agreement pertaining to people who were not covered by the collective bargaining agreement. So no matter how deep you go into the analysis of Section 16.484, you still don't get to the result that the Council is asking for. And finally, his final argument has to do that the voluntary retirement incentive plan is somehow a separate exempt contract. I think the law is, and he bases that upon the Duvaldo case, I hope I pronounced that correctly, but that really pertains to either at-will employees or situations where a policy or a regulation or a handbook is somehow incorporated into an existing contract. These people are clearly not at-will employees. I mean, there's a large body of law that make clear that if you're covered by tenure, you're not an at-will employee. If you're covered by the specifics of legislation 10-23.88, you're clearly not an at-will employee. So this is not a stand-alone exempt contract. But even if you want to say that under some circumstances it could be a stand-alone exempt contract, there's nothing in that regulation, that policy, which would prohibit the school district from changing it pertaining to these administrators. So at most it would be a year-to-year kind of exempt contract, either for 2004-2005 or 2005-2006. So even if you accept all of these preliminary premises from opposing counsel, these payments were still not made pursuant to a grandfathered exempt contract. And for all of these reasons, we believe that the decision of the Board of Trustees should be affirmed. Thank you. Thank you. Rebuttal? Thank you. Just a couple points. The first is that let's assume, arguendo, that there is, in the record, a written employment contract for each of these individuals. There's not, but let's assume there was. Then, at best, that would remove the analysis of the TRS regulation, 1650.484A. And I would agree it wouldn't apply. But that wouldn't get you past what the statute says. The statute exempts contracts or collective bargaining agreements. The Voluntary Retirement Program is a contract. Opposing counsel attempts to establish that it wasn't a contract by saying that the analysis of Dole-DeLisle is limited to at-will employees. There's nothing in Dole-DeLisle or its progeny that says that. Illinois contract law applies to everybody that wants to establish a contract. It doesn't just apply to at-will employees. It doesn't cease to apply to tenured administrators. It applies to everybody. It's the law of the land. And if these individuals had offer, acceptance, and consideration, they could form a valid contract. And under this precedent we've cited, including Malina V. Anheuser-Busch, that contract was entered into before the operative date under the statute, June 1st of 2005. Finally, opposing counsel notes correctly that the administrators at issue were not covered by the terms of the collective bargaining agreement. But that's arguing the wrong way because that's not what the regulation requires for extended grandfathering. The regulation doesn't require the administrators to be covered by a collective bargaining agreement. The regulation requires the policy at issue to be governed by the terms of the collective bargaining agreement. And in this case, the teachers union and the school district came to a collectively bargained agreement that this voluntary retirement program, which covered all certificated staff, administrators and teachers alike, would remain open for its term. And these people put their notice of intent to retire under the term. They met the timelines. And they got the consideration that was clearly set forth in that contract. Does the court have any other questions that I can assist with? I don't believe so. Thank you. Thank you both for your arguments. We'll take this matter under consideration. Thank you. And we recess until the readiness of the next case.